18-2624-cr
*U.S. v. Gayle*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of December, two thousand nineteen.

PRESENT:   JOSÉ A. CABRANES,
           RAYMOND J. LOHIER, JR.,
                   *Circuit Judges,*
           CHRISTINA REISS
                   *District Judge.*\*

_____

UNITED STATES OF AMERICA,

                   *Appellee,*                        18-2624-cr

           v.

TYRIN GAYLE, a.k.a. Spazzo,

                   *Defendant-Appellant,*

LAQUAN FALLS, a.k.a. Greedy; GABRIEL WARREN,
a.k.a. Stackz; DAVID BROWN, a.k.a Baby Thot;
BRENDAN GERMAINE, a.k.a. Brandan Germain;
RASHUN EVANS; LAQUAVIOUS BOYKIN; BRITTANY
HALL; CHRISTOPHER JOHNSON; ARMARD EVANS,
a.k.a. Yellow,
                   *Defendants.*

_____

\* Judge Christina Reiss, of the United States District Court for the District of Vermont, sitting by designation.

FOR APPELLEE:                                    Maurene Comey, Jacqueline Kelly, Lauren
                                                 Schorr, Thomas McKay, *on the brief for*
                                                 Geoffrey S. Berman, United States
                                                 Attorney, Southern District of New York,
                                                 New York, NY.

FOR DEFENDANT-APPELLANT                           Malvina Nathanson, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Cathy Seibel, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be and hereby is **AFFIRMED.**

Defendant-Appellant Tyrin Gayle ("Gayle") appeals from an August 29, 2018 judgment of conviction following a two-week trial before Judge Seibel and a jury. Indictment S8 16 Cr. 361 (CS) charged Gayle in seven counts. Count One charged Gayle with participating in a racketeering conspiracy, in violation of 18 U.S.C. § 1962. Count Two charged Gayle with aiding and abetting an attempted murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5) and 2. Count Three charged Gayle with aiding and abetting an assault and attempted murder in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(3), 1959(a)(5), and 2. Count Four charged Gayle with participating in a conspiracy to distribute 280 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). Count Five charged Gayle with using a minor in furtherance of a drug trafficking crime, in violation of 21 U.S.C. § 861(a)(1). Count Six charged Gayle with using and carrying firearms during and in relation to, and possessing firearms in furtherance of, the racketeering conspiracy charged in Count One and the drug trafficking conspiracy charged in Count Four, some of which firearms were brandished and discharged, and aiding and abetting the same, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), (iii), and 2. Count Seven charged Gayle with attempting to obstruct justice, in violation of 18 U.S.C §§ 1512(c)(2) and 2. Gayle was convicted on all seven counts.

On August 27, 2018, Judge Seibel sentenced Gayle to thirty year's imprisonment, a sentence he is currently serving. Pursuant to the evidence produced at trial and the Probation Office's Pre-Sentence Report ("PSR"), Judge Seibel found that Gayle was a "leader" of the criminal activity and applied a four-level enhancement under Section 3B1.1 of the United States Sentencing Guidelines ("Guidelines").

Gayle challenges only Counts Five and Six of his conviction. He also argues the District Court committed procedural error in applying the leadership enhancement when calculating his Guidelines sentencing range. We otherwise assume the parties' familiarity with the underlying facts,

the procedural history of the case, and the issues on appeal. We find all of Gayle's arguments without merit and affirm the judgment of the District Court.

## I.

Gayle first challenges the sufficiency of the evidence of Count Five, using a minor in furtherance of a drug trafficking crime, in violation of 21 U.S.C. § 861(a)(1). Specifically, Gayle argues there was insufficient evidence establishing that David Brown ("Brown") was under the age of eighteen at the relevant time for this offense.

"We review sufficiency of evidence challenges *de novo*, but defendants face a heavy burden, as the standard of review is exceedingly deferential." *United States v. Baker*, 899 F.3d 123, 129 (2d Cir. 2018) (internal quotation marks omitted). "We must view the evidence in the light most favorable to the [G]overnment, crediting every inference that could have been drawn in the [G]overnment's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *Id.* (internal quotation marks and brackets omitted). "[W]e will sustain the jury's verdict if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks omitted) (emphasis in original).

To establish that Brown was a minor at the relevant time, the Government introduced the testimony of an undercover officer, two of Brown's associates, and several Facebook communications from Brown's account. Gayle did not object to the introduction of the Facebook communications at any time and does not do so on appeal. The Facebook communications from Brown's personal account indicate his eighteenth birthday was April 26, 2016. S. App. at 78-79. Moreover, Brown expressly claims to be seventeen years old in at least six separate Facebook communications made prior to that date. S. App. at 63-68. The testimony of the Government's cooperating witnesses, Brandan Germaine and Laquan Falls ("Germaine" and "Falls")—who were both members of the Yellow Tape Money Gang ("YTMG") with Brown and Gayle—also supports the conclusion that Brown was a minor at the relevant time. Both Germaine and Falls testified that they were members of YTMG with Brown and that they personally knew and interacted with Brown. Both witnesses testified that Brown was seventeen years old at the relevant time, supporting Count Five. Finally, Officer Rodriguez testified that by comparing Brown's Facebook communications with police internal systems, Rodriguez knew Brown was seventeen years old at the relevant time. Viewing that testimonial evidence in conjunction with the Facebook communications—in the light most favorable to the Government—we conclude that there was sufficient evidence to establish Brown was a minor and sustain the conviction under Count Five.[1]

---

[1] Gayle argues on appeal that there an was insufficient foundation for Germaine and Falls to testify as to Brown's age. This argument is raised for the first time on appeal. Gayle also argues that Officer Rodriguez's testimony lacked foundation and was inadmissible hearsay. Those arguments are

## II.

Gayle next argues there was insufficient evidence to sustain his conviction under Count Six, using and carrying firearms during and in relation to, and possessing firearms in furtherance of, the racketeering conspiracy charged in Count One and the drug trafficking conspiracy charged in Count Four, some of which firearms were brandished and discharged, and aiding and abetting the same, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), (iii), and 2. Specifically Gayle argues that—although there are instances of gun use and instances of drug trafficking—there was insufficient evidence to establish the requisite nexus between those two.[2] We disagree.

Section 924(c) provides that "any person who, during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall" be guilty of a crime. 18 U.S.C. § 924(c)(1)(A). "The phrase 'in relation to' is expansive." *Smith v. United States*, 508 U.S. 223, 237 (1993). It is established that "the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." *Id.* at 238. The phrase "in furtherance of" requires the Government to show "some nexus between the firearm and the drug selling operation." *United States v. Finley*, 245 F.3d 199, 203 (2d Cir. 2001). "[T]he ultimate question is whether the firearm afforded some advantage (actual or potential, real or contingent) relevant to the vicissitudes of drug trafficking." *United States v. Snow*, 462 F.3d 55, 62 (2d Cir. 2006) (internal quotation marks omitted).

Falls and Germaine testified that Gayle owned multiple firearms which he often lent to other YTMG members, kept in his home, or stored in various locations accessible to all members of the group. The latter included hidden locations in public areas as well as YTMG members' houses. Testimony from Falls, Germaine, and a police officer supervising controlled drug buys from Gayle

---

also raised for the first time on appeal. We note first that even were that evidence improperly admitted, "we must make our determination concerning sufficiency taking into consideration even the improperly admitted evidence." *United States v. Hardwick*, 523 F.3d 94, 101 (2d Cir. 2008) (internal quotations omitted). Moreover, we need not reach those issues because we conclude that any putative error here did not "seriously affect[] the fairness, integrity, or public reputation of the judicial proceeding" as is required under the plain-error standard these challenges, having not been raised at trial, are now subject to. *Johnson v. United States*, 520 U.S. 461, 466 (1997) (alteration and internal quotation marks omitted).

[2] Gayle also argues that following *United States v. Davis*, 139 S. Ct. 2319 (2019), the racketeering conspiracy charged in Count One cannot, as a matter of law, serve as a predicate "crime of violence" offense to support the firearm offense charged in Count Six. The Government concedes that point. Government Brief at 12. We do not express an opinion on that argument. We do, however, expressly affirm Gayle's conviction under Count Six in sole reliance on the *narcotics* predicate charged in Count Four, as the Government urges us to do in their brief.

4

all indicated that the firearm stash locations were strategically located in the territory where YTMG and Gayle made drug sales. This testimony was further corroborated by that of law enforcement officers who recovered Gayle's firearms from various stash locations in the drug distribution territory. Moreover, there was clearly sufficient evidence that Gayle participated in multiple shootings perpetrated against members of a rival drug-dealing gang known as Southside. Gayle argues that the "beef" between YTMG and Southside was personal and that these shootings between the two were not related to the narcotics conspiracy. Viewing the evidence in the light most favorable to the Government and crediting every inference that could have been drawn in the Government's favor, we conclude that a rational jury could infer from the cumulative evidence presented at trial that these firearm stash locations and shootings against rival drug gangs established the relevant narcotics nexus.

### III.

Finally, Gayle argues that the District Court erred in applying a four-level "leader" enhancement to his Guidelines sentencing calculation. We find no error and affirm the sentence as imposed.

"A district court's imposition of an enhancement for a defendant's role as an organizer or leader under U.S.S.G. § 3B1.1(a) is subject to a mixed standard of review." *United States v. Si Lu Tian*, 339 F.3d 143, 156 (2d Cir. 2003) (citation omitted). We review the sentencing court's factual for clear error, and we apply *de novo* review to the determination that those findings support the enhancement. *Id.* "Determining whether a defendant's role in an offense constitutes that of an organizer or leader requires that we examine the degree of discretion exercised by him, the nature and degree of his participation in planning or organizing the offense, and the degree of control and authority exercised over the other members of the conspiracy." *Id.* at 157 (internal quotation marks omitted).

Gayle argues that he cannot be a leader because other members of YTMG conducted similar acts to those on which the District Court based its leadership enhancement. The leadership enhancement applies, however, where the defendant is *a* leader; nowhere do the Guidelines state that there can be only one leader in a conspiracy. *See* U.S.S.G. § 3B1.1(a); *see also Si Lu Tian,* 339 F.3d at 157 (noting that "one conspirator's leadership role is not dispositive on the question of whether another was also a leader") (internal quotation marks omitted). Moreover, the District Court had a factual basis in the trial record to support the conclusion that Gayle played a leadership role in organizing and carrying out YTMG's criminal conduct. Multiple former YTMG members testified that Gayle was the founder of YTMG. There was also testimony that Gayle created the name YTMG and operated as its "leader." Trial Transcript at 156, 163. There was video evidence introduced of Gayle referring to himself as the "King" and "Big Homie," which a cooperating YTMG affiliate testified meant Gayle was referring to himself as "the boss" of the gang. *Id.* at 255-257. Falls and Germaine both testified that Gayle also provided guns and drugs to YTMG, recruited

5

younger members, planned multiple drive-by shooting attempts, and was generally older than other members of YTMG. The Government highlights on appeal two incidents particularly representative of the leadership role Gayle had and the influence he held over younger YTMG members. On one occasion, Gayle organized members of the gang to carry out a retaliatory shooting against Southside members. Taking his own car, Gayle recruited Brown and another to undertake the shooting. When the group arrived in Southside "turf," they were disappointed that they were unable to locate a Southside member. At this point, Gayle decided they would shoot at the next person to exit a corner store frequented by Southside members, regardless of who the person was. Someone in Gayle's car then shot an innocent civilian in the stomach. In another incident, after YMTG members saw a Southside car enter YTMG territory, Gayle gave Brown his .357 revolver and directed Brown, then only seventeen years old, to look out for the car. When Brown appeared scared, Gayle took the gun back and shot at the Southside car when it drove by.

The District Court found that Gayle had influence and leadership power, which he reveled in and used to perpetuate senseless violence. S. App. at 50. We identify no error in the District Court's application of the Guidelines leadership enhancement.

## CONCLUSION

We have reviewed all of the arguments raised by Gayle on appeal and find them to be without merit. For the foregoing reasons, we **AFFIRM** the August 29, 2018 judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

6